## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **SABLE PERMIAN RESOURCES, LLC,** *et al.*, | § | Case No. 20-33193 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

## SUMMARY OF FIRST INTERIM FEE APPLICATION OF EVERCORE GROUP L.L.C., INVESTMENT BANKER TO THE DEBTORS AND DEBTORS IN POSSESSION, FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM JUNE 25, 2020 THROUGH AND INCLUDING SEPTEMBER 30, 2020

> **THIS APPLICATION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Sable Permian Resources, LLC (5172); SPR Stock Holdings, LLC (2065); Sable Permian Resources Operating, LLC (3212); SPR Holdings, LLC (3611); SPRH Finance Corporation (1390); Sable Permian Resources Corporation (9049); Sable Permian Resources Finance, LLC (6841); SPR Finance Corporation (0359); and Sable Land Company, LLC (7101).  The location of the Debtors' main corporate headquarters and the Debtors' service address is:  700 Milam Street, Suite 3100, Houston, TX 77002.

**Fee Application Summary**

| | Beginning of Period | End of Period |
|---|---|---|
| **Name of Applicant:** | Evercore Group L.L.C. | |
| **Applicant's Role in Case:** | Investment Banker to the Debtors and Debtors in Possession | |
| **Date Order of Employment Signed:** | 08/07/20, effective as of the Petition Date, 06/25/20 (Docket No. 278) | |
| **Time period covered by this Application:** | 06/25/20 | 09/30/20 |
| **Total amounts awarded in all prior Applications:** | $0[2] | |
| **Total fees requested in this Application:** | $750,000.00 | |
| **Total professional fees requested in this Application:** | $750,000.00 | |
| **Total actual professional hours covered by this Application:** | 1,414.5 | |
| **Average hourly rate for professionals:** | N/A | |
| **Total paraprofessional fees requested in this Application:** | N/A | |
| **Total actual paraprofessional hours covered by this Application:** | N/A | |
| **Average hourly rate for paraprofessionals:** | N/A | |
| **Reimbursable expenses sought in this Application:** | $30,109.52 | |
| **Total to be Paid to Priority Unsecured Creditors:** | TBD | |
| **Anticipated % Dividend to Priority Unsecured Creditors:** | TBD | |
| **Total to be Paid to General Unsecured Creditors:** | TBD | |
| **Anticipated % Dividend to General Unsecured Creditors:** | TBD | |
| **Date of Confirmation Hearing:** | TBD | |
| **Indicate whether plan has been confirmed:** | No | |

---

[2]     Prior to the Petition Date, Evercore received $10,000.00 from the Debtors as an expense retainer, all of which was applied towards pre-petition expenses.

**Summary of First Interim Fee Period**

**Hours by Professional**

Evercore professionals rendering services during the Interim Fee Period were:

| Summary of Hours of Service by Evercore | | |
|---|---|---|
| **Professional** | **Position** | **Total Hours** |
| Daniel Aronson | Senior Managing Director | 41.0 |
| Doug Rogers | Senior Managing Director | 3.0 |
| Ignacio Scuseria | Managing Director | 91.0 |
| Santiago Garavito | Managing Director | 142.0 |
| Pranav Goel | Vice President | 108.0 |
| Robert Paul | Vice President | 121.5 |
| Aaron Van Dolah | Vice President | 117.0 |
| Daniel Lakhdhir | Associate | 124.5 |
| Monica Winch | Associate | 144.5 |
| Chase Wilke | Associate | 211.0 |
| Alex Li | Senior Analyst | 102.5 |
| Jordan Steinberg | Analyst | 184.0 |
| Anjali Chikkula | Analyst | 14.0 |
| Belle Ma | Summer Associate | 10.5 |
| **Total** | | **1,414.5** |

**Hours by Matter**

Hours expended by these professionals by matter during the Interim Fee Period were:

| Hours by Matter | |
| --- | --- |
| **Matter** | **Total** |
| 1. Case Administration/Court Hearings | 111.5 |
| 2. Due Diligence/Business Plan | 285.0 |
| 3. Capital Structure/Financing | 43.5 |
| 4. Plan of Reorganization | 73.5 |
| 5. Asset Sales | 632.0 |
| 6. Stakeholder Communication | 247.0 |
| 7. Travel | 0.0 |
| 8. Evercore Retention/Fee Applications | 22.0 |
| **Total** | **1,414.5** |

## <u>Expense Summary[3]</u>

Summary of expenses by category:

| Expense Type | Amount |
| --- | ---: |
| Overtime Meals | $845.62 |
| Transportation | 5.00 |
| Research | 8,118.62 |
| Technology Services | 17,055.91 |
| Legal Services | 3,746.50 |
| Production | 337.87 |
| **Total** | **$30,109.52** |

---

[3] Expenses included in this Application are those expenses for which invoices were received during the Interim Fee Period, which may differ from the periods in which such expenses were actually incurred.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **SABLE PERMIAN RESOURCES, LLC**, *et al.*, | § | Case No. 20-33193 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**FIRST INTERIM FEE APPLICATION OF EVERCORE GROUP L.L.C., INVESTMENT
BANKER TO THE DEBTORS AND DEBTORS IN POSSESSION, FOR ALLOWANCE AND
PAYMENT OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
JUNE 25, 2020 THROUGH AND INCLUDING SEPTEMBER 30, 2020**

Evercore Group L.L.C. ("Evercore"), investment banker to Sable Permian Resources, LLC

and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "Debtors"),

hereby submits its first interim fee application (the "Application") for the interim allowance of (a)

compensation of fees for reasonable and necessary professional services provided to the Debtors

in the aggregate amount of $750,000.00 and (b) reimbursement of actual and necessary costs and

expenses in the aggregate amount of $30,109.52 incurred by Evercore during the period from June

25, 2020 through September 30, 2020 (the "Interim Fee Period"). In support of the Application,

Evercore respectfully states as follows:

**Jurisdiction and Venue**

1.       The United States Bankruptcy Court for the Southern District of Texas (the

"Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Sable Permian Resources, LLC (5172); SPR Stock Holdings, LLC (2065); Sable Permian Resources Operating, LLC (3212); SPR Holdings, LLC (3611); SPRH Finance Corporation (1390); Sable Permian Resources Corporation (9049); Sable Permian Resources Finance, LLC (6841); SPR Finance Corporation (0359); and Sable Land Company, LLC (7101). The location of the Debtors' main corporate headquarters and the Debtors' service address is: 700 Milam Street, Suite 3100, Houston, TX 77002.

core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The bases for and standards governing the relief requested herein are sections 327(a), 328(a), 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 233] (the "Interim Compensation Order"), the *Order Authorizing the Retention and Employment of Evercore Group L.L.C. as Investment Banker to the Debtors* [Docket No. 278] (the "Retention Order," a copy of which is attached hereto as **Exhibit A**) and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 (the "UST Guidelines" and, collectively with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Case Procedures and the Retention Order, the "Guidelines").

## **Background**

3.     On June 25, 2020 (the "Petition Date"), the Debtors commenced these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Anthony C. Duenner, Vice President, Corporate Development of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings*, filed on June 26, 2020 [Docket No. 23].

4.       On July 13, 2020, the Debtors filed the *Debtors Application for Entry of an Order Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker* [Docket No. 152] (the "Retention Application").

5.       On July 27, 2020, the Court entered the Interim Compensation Order, establishing procedures for interim compensation and reimbursement of expenses of professionals.

6.       On August 7, 2020, the Court entered the Retention Order, pursuant to which the Debtors are authorized to compensate Evercore for professional services rendered to the Debtors.

## Monthly Fee Statements

7.       Evercore submitted a Monthly Fee Statement for fees and expenses incurred in the months of June 25, 2020 through July 31, 2020, August 1, 2020 through August 31, 2020 and September 1, 2020 through September 30, 2020. The fees and expenses requested are set forth below:

| Date Noticed | Period Covered | Total Compensation & Expenses Incurred For Period Covered | | Total Amount Previously Requested with Monthly Fee Statements | | Total Amount Paid to Date | | Holdback Fees Requested |
|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees (@80%) | Expenses (@100%) | Fees | Expenses | Fees |
| September 1, 2020 | June 25 - July 31, 2020 | $250,000.00 | $6,990.46 | $200,000.00 | $6,990.46 | $200,000.00 | $6,990.46 | $50,000.00 |
| September 28, 2020 | Aug. 1-31, 2020 | $250,000.00 | $9,985.29 | $200,000.00 | $9,985.29 | $200,000.00 | $9,985.29 | $50,000.00 |
| November 9, 2020 | Sept. 1-30, 2020 | $250,000.00 | $13,133.77 | $200,000.00 | $13,133.77 | $0.00 | $0.00 | $50,000.00 |
| **Total** | | **$750,000.00** | **$30,109.52** | **$600,000.00** | **$30,109.52** | **$400,000.00** | **$16,975.75** | **$150,000.00** |

## **Compliance with the Guidelines**

8.      To the best of my knowledge, the Application complies with the applicable provisions of the Guidelines.  Pursuant to, and consistent with, the relevant requirements of the Guidelines, as applicable, the following exhibits are attached hereto:

A.      **Exhibit A** contains Evercore's Retention Order;

B.      **Exhibit B** contains time records for the Interim Fee Period detailing the name of each professional for whose work compensation is sought and the aggregate time expended by each professional;

C.      **Exhibit C** contains a summary of Evercore's fees and reimbursable expenses, including invoices for legal fees, for the Interim Fee Period; and

D.      **Exhibit D** contains the Monthly Fee Statements for the Interim Fee Period.

9.      To the extent that this Application is not in compliance with the Guidelines, Evercore respectfully submits that such noncompliance is immaterial and requests a waiver of the applicable requirements.

10.      No understanding exists between Evercore and any other person for the sharing of compensation sought by Evercore, other than as permitted by section 504 of the Bankruptcy Code.

## **Summary of Professional Services**

11.      To provide a meaningful summary of services rendered on behalf of the Debtors and their estates, Evercore has established, in accordance with the applicable provisions of the Guidelines and its internal time keeping procedures, the following matter numbers in connection with these chapter 11 cases:

| Matter Number | Description |
|:---:|:---|
| 1 | Case Administration / Court Hearings |
| 2 | Due Diligence / Business Plan |
| 3 | Capital Structure / Financing |
| 4 | Plan of Reorganization |
| 5 | Asset Sales |
| 6 | Stakeholder Communication |
| 7 | Travel |
| 8 | Evercore Retention / Fee Applications |

12.     The following is a summary, by matter, of the most significant professional services rendered by Evercore during the Interim Fee Period.[2]  This summary is organized in accordance with Evercore's internal system of matter numbers.  The detailed descriptions below and the time records attached as **Exhibit B** demonstrate that Evercore was heavily involved in performing services for the Debtors on a daily basis to meet the Debtors' needs in these chapter 11 cases.

### I.      Case Administration / Court Hearings (Matter #1)

Total time: 111.5 hours

13.     This category includes time spent by Evercore professionals on telephone calls and in meetings with the Debtors and their attorneys and other professionals regarding the status of the case.  This category includes time spent on the preparation and review of court documents filed by the Debtors and other parties-in-interest, except as relating to the Retention Application and documents related to the plan of reorganization and debtor-in-possession and exit financings, in each case not recorded in other matter categories.

---

[2] Evercore has not provided summaries of matters for which no time was billed during the Interim Fee Period.

5

14.     This category also includes general administrative and organizational tasks necessary to execute responsibilities in these chapter 11 cases, as well as time spent attending and participating in court hearings regarding these chapter 11 cases.

**II.     Due Diligence / Business Plan (Matter #2)**

Total time: 285.0 hours

15.     This category includes time spent by Evercore professionals analyzing reserves, technical data and other information provided by the Debtors' management team and discussions regarding such provided information.

16.     This category also includes time spent by Evercore professionals: (a) conducting financial analysis on the Debtors' business plan, including reviewing and analyzing key operational and financial assumptions in the business plan, (b) discussions with the Debtors' management team regarding the development of the business plan and the assumptions contained therein, (c) reviewing and discussing ongoing business performance, and (d) conducting and reviewing other relevant financial analyses.

17.     The vast majority of the due diligence conducted by Evercore professionals occurred prior to the commencement of these chapter 11 cases during the initial stages of its engagement, which time is not included in the total hours above.

18.     Certain hours related to this category may have also been recorded (without duplication) in Capital Structure / Financing (Matter #3), Plan of Reorganization (Matter #4), and Asset Sales (Matter #5) due to overlapping subject matter.

**III.     Capital Structure / Financing (Matter #3)**

Total time: 43.5 hours

19.     This category includes time spent by Evercore professionals: (a) reviewing, commenting on, and assisting in the negotiation of terms and documentation related to proposed financings, including those included in the plan of reorganization, (b) discussions with the Debtors' management team, the Debtors' attorneys, and other parties-in-interest regarding proposed financings, (c) conducting analysis and negotiating terms related to the proposed financings, including analyzing the covenants and rates associated therewith, and (d) analyzing and reviewing securities in the Debtors' existing capital structure.

20.     Certain hours related to this category may have also been recorded (without duplication) in Due Diligence / Business Plan (Matter #2), Plan of Reorganization (Matter #4), and Asset Sales (Matter #5) due to overlapping subject matter.

### IV.     Plan of Reorganization (Matter #4)

Total time: 73.5 hours

21.     This category includes time spent by Evercore professionals: (a) reviewing, commenting on, and assisting in the negotiation of terms and documentation of the plan of reorganization and related documents, (b) performing and reviewing analysis of alternative transactions, including those formally and informally proposed by the advisors to the Ad Hoc Group of Senior Secured Noteholders (the "Ad Hoc Group") and the Debtors' equity sponsors (the "Sponsors"), and the resulting levels of indebtedness, covenants, liquidity, equity splits, and recoveries, and (c) constructing and utilizing financial models to determine the impact of the proposed structures on the Debtors' capital structure going forward, including liquidity and leverage metrics, as well as other relevant statistics.

22.     Certain hours related to this category may have also been recorded (without duplication) in Due Diligence / Business Plan (Matter #2), Capital Structure / Financing (Matter #3), and Asset Sales (Matter #5) due to overlapping subject matter.

**V.      Asset Sales (Matter #5)**

Total time: 632.0 hours

23.     This category includes time spent by Evercore professionals: (a) developing marketing materials for the third party sale process, (b) preparing and maintaining the data room used in the third party sale process, (c) discussing the Debtors' business, transaction structure, and other matters with interested parties, and facilitating discussions between such parties and the Debtors' management team, the Debtors' attorneys, and other constituents, and (d) analyzing proposals  received from potential purchasers, all in accordance with the *Order (A) Establishing Bidding Procedures and (B) Approving Bid Protections Relating to the Sale of All or a Portion of the Debtors' Assets* [Docket No. 306] (the "Bidding Procedures Order").

24.     Certain hours related to this category may have also been recorded (without duplication) in Due Diligence / Business Plan (Matter #2), Capital Structure / Financing (Matter #3), and Plan of Reorganization (Matter #4) due to overlapping subject matter.

**VI.     Stakeholder Communication (Matter #6)**

Total time: 247.0 hours

25.     This category includes time spent by Evercore professionals participating in meetings of the Board of Managers and Special Committee to discuss strategic and other issues relating to these chapter 11 cases.

26.     This category also includes time spent by Evercore professionals negotiating and discussing numerous issues with creditors, the UCC and their respective legal and financial advisors. This category also includes time spent responding to creditor due diligence requests.

**VII.    Evercore Retention / Fee Applications (Matter #8)**

Total time: 22.0 hours

27.     This category includes time spent by Evercore professionals drafting and reviewing Evercore's Retention Application. This category also includes time spent by Evercore professionals preparing and reviewing monthly fee statements and interim fee applications.

**Reasonable and Necessary Services Rendered by Evercore**

28.     Evercore submits that the foregoing professional services and advice it rendered to the Debtors in connection with the chapter 11 cases during the Interim Fee Period were reasonable, necessary, appropriate and beneficial to the Debtors, their creditors and their estates.  All services for which compensation is requested by Evercore were performed for, at the request of or on behalf of the Debtors or their counsel.  These services were performed at a high level and were often subject to significant time constraints.  These services were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases.

29.     The amount of fees and expenses sought in this Application and Evercore's billing processes are consistent with market practices for investment banking firms both in and out of a bankruptcy context.  Evercore's policy for all engagements, in- or out-of-bankruptcy, is to dedicate the appropriate number of professionals to the assignment to complete the work as efficiently as possible.

30.     Typical of investment bankers of its kind, Evercore is not compensated by the hour, but through a structure of fixed fees and related compensation, such as was approved by the Retention Order.  Accordingly, certain information appropriate to consideration of the fee requests of hourly-rate compensated professionals, such as blended rates or maturation, does not exist for Evercore.  Similarly, Evercore does not have hourly rates for its professionals and Evercore's professionals generally do not maintain time records for the work performed for its clients.  Consistent with the terms of the Retention Order, however, Evercore has maintained a daily time log detailing the activities and services performed by Evercore on behalf of the Debtors, in half-hour increments, during the Interim Fee Period.

## Actual and Necessary Expenses Incurred by Evercore

31.     Pursuant to the Retention Order, Evercore is entitled to reimbursement of reasonable and documented out-of-pocket expenses incurred in entering into and providing services pursuant to the Engagement Letter during the Interim Fee Period.

32.     As set forth in **Exhibit C** attached hereto, Evercore has incurred a total of $30,109.52 in expenses on behalf of the Debtors during the Interim Fee Period.  Evercore submits that all such expenses were necessarily incurred, are reasonable in amount and represent only the actual costs incurred.[3]

33.     Evercore's charges for expenses to the Debtors are determined in the same manner as for clients in non-Bankruptcy Codes.  Out-of-pocket expenses incurred by Evercore are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client.  Evercore does not factor general overhead expenses

---

[3] Expenses included in this Application are those expenses for which invoices were received during the Interim Fee Period, which may differ from the periods in which such expenses were actually incurred.

into disbursements charged to clients in connection with chapter 11 cases.  Evercore has followed its general internal policies with respect to out-of-pocket expenses billed to the Debtors as set forth below, with any exceptions fully explained.

34.     Evercore's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such mealtime due to extreme time constraints.  Evercore's employees are permitted to order meals in the office if Evercore's employee is required to work after 8:00 p.m. on weekdays or more than five (5) consecutive hours on weekends or holidays.  Meal expenses incurred during meetings which employees and other meeting participants are required to attend are billed at cost.

35.     Messengers and couriers are used by Evercore to deliver hard copy documents relating to a client matter, which require receipt on an expedited basis; otherwise, Evercore uses the U.S. Post Office.  Any charges for either messengers or couriers are billed to the client at cost.

36.     All airfare and other transportation charges incurred by Evercore's employees directly in connection with services to the client are billed to the client at cost.

37.     With respect to local travel, Evercore's general policy enables employees to travel by taxi or, in certain circumstances, by private car service, to and from meetings while rendering services to a client on a client related matter, for which the client is charged.  This policy is based on Evercore's determination that travel by taxi or private car service is the most efficient use of a professional's time.  Evercore's employees are not permitted to charge personal commuting expenses to a client unless the employee is traveling after 9:00 p.m. or during the weekend and has been required to work late or during the weekend as a result of the time exigencies of that client's matters.

38.     The research category consists of the cost of using databases (*e.g.*, FactSet, Reorg Research, Capital IQ, ThomsonOne, Factiva, etc.) to which Evercore subscribes to search for and obtain information used in Evercore's financial analyses.  Evercore pays the vendor's standard rate for such database services. In certain instances, Evercore has determined that paying a flat annual or monthly fee for such services is less costly than contracting for such services on a per use basis. Such annual or monthly services are allocated to clients based on Evercore's use of each service on behalf of such clients.  The research category also includes charges from outside services, which supply, for a fee, financial documents from regulatory agencies, which cannot be obtained from databases subscribed to by Evercore.

39.     The technology services category primarily consists of the cost of maintaining a data room used to facilitate diligence in the third party marketing process.

40.     During the Interim Fee Period, Evercore received invoices for legal expenses incurred in connection with preparing its retention and prior fee applications and addressing certain related informal comments and formal objections from the Office of the United States Trustee. These legal expenses were necessary and beneficial to the Debtors' estates in enabling them to comply with their discovery obligations.

41.     Evercore has made every effort to minimize its expenses in these chapter 11 cases. All of the fees and expenses for which allowance and payment are requested by Evercore in this Application are reasonable and necessary.  In seeking reimbursement of expenditure, Evercore is requesting reimbursement "at cost" and does not make a profit on such expenditure.

**<u>Evercore's Requested Compensation and Reimbursement Should be Allowed</u>**

42.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to

12

govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that, subject to section 328 of the Bankruptcy Code, a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."

43.     The Retention Order approved Evercore's compensation pursuant to section 328 of the Bankruptcy Code, subject to the terms of the Retention Order.  Accordingly, compensation and expense reimbursement is sought subject to the standard of review set forth in section 328 of the Bankruptcy Code, and not the standard of review set forth in section 330 of the Bankruptcy Code, but subject to the terms of the Retention Order.

44.     The services summarized by this Application and rendered by Evercore to the Debtors during the Interim Fee Period were substantial, highly professional and instrumental to the Debtors in pursuing their restructuring efforts and maximizing value of the Debtors' estates. Evercore respectfully submits that the compensation and reimbursement requested by this Application is reasonable in light of the nature and value of such services.

## Reservation of Rights

45.     Although every effort has been made to include all fees and expenses incurred in the Interim Fee Period, some fees and expenses might not be included in this Application due to delays caused by accounting and processing during the Interim Fee Period.  Evercore reserves the right to make further application to the Court for allowance of such fees and expenses not included herein.

## Notice

46.     Pursuant to the Interim Compensation Order, notice of this Fee Application will be provided to the Notice Parties (as defined in the Interim Compensation Order).

13

### **No Prior Request**

47.     No prior application for the relief requested herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank.]*

14

WHEREFORE, Evercore respectfully requests that the Court enter an order, substantially in the form filed with this Application, (a) awarding Evercore final compensation for professional services provided during the Interim Fee Period in the amount of $750,000.00 in fees and $30,109.52 in expenses; (b) authorizing and directing the Debtors to remit payment to Evercore, to the extent not already paid, for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Dated: November 13, 2020

/s/ _____

Daniel Aronson
Evercore Group L.L.C.
55 East 52nd Street
36th Floor
New York, NY 10055

## Certificate of Compliance

I, the professional designated as the "Certifying Professional" with respect to this Fee Application, hereby certify that (1) I have read the foregoing Fee Application,[1] (2) to the best of my knowledge, information and belief, formed after reasonable inquiry, the compensation and reimbursement sought is in conformity with the Guidelines, except as modified and permitted by Evercore's Retention Order, and (3) the compensation and expense reimbursement requested are billed at rates in accordance with practices no less favorable than those customarily employed by Evercore Group L.L.C. and generally accepted by clients of Evercore Group L.L.C. for similar services.

Dated: November 13, 2020

/s/ _____
Daniel Aronson
Evercore Group L.L.C.
55 East 52nd Street
36th Floor
New York, NY 10055

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Fee Application.