## **EXHIBIT 1**

**Plan Support Letter Agreement**

**In re Sable Permian Resources, LLC,** *et al.*

**SETTLEMENT TERM SHEET**

This Settlement Term Sheet (this "Term Sheet") describes the principal terms of a settlement (the "Settlement") with the official committee of unsecured creditors (the "Committee") in the Bankruptcy Cases of Sable Permian Resources, LLC ("SPR") and its affiliated debtors-in-possession (the "Debtors").

All capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Joint Plan of Reorganization and Liquidation for Sable Permian Resources, LLC and its Affiliate Debtors under Chapter 11 of the Bankruptcy Code* filed on December 1, 2020 [Docket No. 591] (the "Plan"). It is contemplated that the terms of the Term Sheet shall be incorporated into an amended joint plan (the "Amended Plan").

Nothing herein shall be deemed to be a stipulation, concession, admission, or probative of any view, fact, opinion, position, or otherwise.

| **Parties:** | Parties to the Settlement will include: <br><br> 1. the Debtors; <br> 2. JPMorgan Chase Bank, N.A., in its capacities as Credit Agreement Agents; <br> 3. the Committee; <br> 4. the individual putative defendants (the "Defendants")[1] listed in the *Emergency Motion of Official Committee of Unsecured Creditors for Order Granting Committee Derivative Standing to Pursue and, if appropriate, Settle Claims against Certain Current or Former Directors and Officers and Granting Related Relief* [Dkt. No. 567] (including in any draft pleading attached thereto) (the "Motion"); and <br> 5. Sable Management, LLC ("SML") |
|---|---|
| **Committee's Consideration:** | The Holders of Credit Agreement Claims agree to: (a) pay to the estates of SPR and/or SPR OpCo, and to SPR Finance, solely for benefit of the Unsecured Notes Indenture Trustee as set forth below, $11 million dollars in cash (the "Cash Consideration"), and (b) issue the New Warrants on terms consistent with those set forth in the Plan, a Pro Rata portion of which shall be distributed to Holders of Class 9 – Unsecured Notes Claims. <br><br> The Cash Consideration shall be allocated among the estates as set forth on Exhibit A hereto, and which amounts will fund a cash distribution to |

---

[1] For the avoidance of doubt, the Defendants are: James Flores, Gregory Patrinely, John Wombwell, Doss Bourgeois, Carolyn Bertrand, Adam Brock, Brian Broussard, Kenneth Cunningham, Anthony Duenner, William Flores, Mary Kebodeaux, Craig Landry, Stephen Laperouse, Rowdy Lemoine, Ross Pilcik, Scott Trackwell, Randy Vines, Brian Yearwood, Caldwell Flores, James Bailey, and Jonathan Fitzsimons.

1

| | the Holders of Allowed General Unsecured Claims against SPR and SPR OpCo and the payment of the reasonable fees and expenses of the Unsecured Notes Indenture Trustee in an amount not to exceed $350,000. For the avoidance of doubt, all other Claims, whether having administrative, secured or priority status, are the responsibility of Reorganized Sable Land and/or the Holders of Credit Agreement Claims. In exchange for the Cash Consideration, Reorganized Sable Land will receive title to any and all assets of SPR and the other Debtors (other than SPR Finance and SPR Finance Corporation) that are designated in writing by the Credit Agreement Agents prior to the plan supplement filing deadline, including the Purchased Claims (defined below) (collectively, the "Purchased Assets"). The Purchased Assets will include, but shall not be limited to, the following:<br><br>1. the aircraft owned by SPR OpCo;<br>2. certain vehicles owned by SPR and useful in the go-forward business of Reorganized Sable Land[2];<br>3. a tract of land owned by SPR to support a temporary field office;<br>4. any unencumbered real property interests held by Sable Land, in exchange for an additional $388,000 to be distributed to Holders of Allowed General Unsecured Claims against Sable Land; and<br>5. all avoidance action claims and other litigation claims owned by any of the Debtors' estates (a) against the Debtors' current or former employees, officers, managers, directors and/or professionals (b) against the Credit Agreement Agents, the Holders of Credit Agreement Claims, the Ad Hoc Group, the Holders of Secured Notes Claims, the Holders of Unexercised Equity Interests in SPR Finance and (c) against the individuals identified in the Motion (the "Purchased Claims").[3]<br><br>The Purchased Assets will be identified in a plan schedule filing made prior to the plan supplement filing deadline established in these Chapter 11 Cases. |
|---|---|

---

[2] SPR shall also assume and assign to Reorganized Sable Land certain leases in respect of additional vehicles useful in the go-forward business of Reorganized Sable Land, *provided* that Reorganized Sable Land and the Holders of Credit Agreement Claims shall be responsible for the cure costs associated with such assignment and assumption.

[3] All avoidance claims that are not Purchased Claims (the "Retained Avoidance Actions") shall be prosecuted by the Plan Administrator except to the extent that the proposed defendants have been identified by the Credit Agreement Agents, acting in good faith, as entities that are current providers of goods and/or services to Reorganized Sable Land and any disruption in the provision of such goods and/or services would have a material adverse effect on Reorganized Sable Land or the Purchased Assets. The Committee shall use its reasonable best efforts to provide a description of the Retained Avoidance Actions to be included in the Plan Supplement.

2

| | |
|---|---|
| **Plan Administrator/Liquidating Entity** | The liquidation of the Liquidating Debtors shall be structured in a manner subsequently determined by the Debtors acting with the consent of the Credit Agreement Agents and in consultation with the Committee, but in all cases such structure shall be consistent with the terms set forth in this Term Sheet and shall not cause the Liquidating Debtors or the Plan Administrator to incur additional costs and/or expenses or reduce the Cash Consideration.<br><br>The plan administrator or other entity (e.g. liquidating trustee) managing the liquidation process of the Liquidating Debtors shall be selected by the Committee and reasonably acceptable to the Credit Agreement Agents (the "Plan Administrator").  The Committee's professionals may serve as professionals to the Plan Administrator.<br><br>The liquidation will involve the Wind Down and the Transition Services.  The Plan Administrator will be responsible for the Wind Down and certain current employees of the Debtors will be responsible for the Transition Services. |
| **Wind Down** | The Plan Administrator shall provide the following services (such services, the "Wind Down"):<br><br>1. administration of the claims objection and claims reconciliation process;<br>2. administration of the prosecution of Retained Avoidance Actions;<br>3. distribution of the proceeds resulting from the Retained Avoidance Actions to the Holders of Allowed General Unsecured Claims against the applicable Liquidating Debtor;<br>4. liquidation of the assets, if any, of the Liquidating Debtors (other than the Purchased Assets);<br>5. distribution of the proceeds of any assets so liquidated to Reorganized Sable Land;<br>6. preparation and filing of any required final SPR and SPR HoldCo Texas and Federal tax returns for 2020 and 2021; no portion of the Cash Consideration shall be used for any payments due to any taxing authority, including without limitation, tax payments, penalties and late fees, and Plan Administrator shall have no liability, and shall be indemnified, with respect to any of such payments;<br>7. the preparation and filing of United States Trustee reports and the payment of United States Trustee fees owed by the Liquidating Debtors;[4] |

---

[4] All of the Debtors' cases, other than the cases of SPR, SPR OpCo and Sable Land, shall be closed immediately upon the Effective Date of the Amended Plan.  The Debtors shall, promptly, and in any event prior to the Effective Date, object to all claims against SPR OpCo except for amounts that are actually owed to the IRS.

3

|  | 8. the Plan Administrator shall not have the responsibility to prepare and file a final audit but the Plan Administrator shall have the responsibility to prepare and file a final 401(k) audit and oversee the wind-down of such 401(k) plan;<br>9. the filing of a final decree closing these Chapter 11 Cases;<br>10. the dissolution of the Liquidating Debtors;<br>11. otherwise winding up the Estates of the Liquidating Debtors; and<br>12. overseeing professionals to do all of the foregoing.<br><br>The Cash Consideration will be used to fund the Wind-Down and any costs, expenses, fees or other amounts associated with the Wind Down. The costs of the Wind Down of the Liquidating Debtors shall not include, and therefore, none of the Cash Consideration will be used to satisfy the Transition Services. All fees and expenses of the Plan Administrator in connection with the Wind Down shall be solely the responsibility of the Liquidating Debtors. |
|---|---|
| **Transition Services** | Certain current employees of the Debtors shall provide the following services, plus any additional services set forth in the transition services agreement to be filed as a plan supplement (such services, the "Transition Services"):<br><br>1. oversight and maintenance of IT systems and data until data back-up and transfer can be finalized;<br>2. coordination and reconciliation of accounting and recording functions through the transition period;<br>3. coordination and reconciliation of working capital payments and unwind; and<br>4. oversight and employment of employees providing the transition services<br><br>The Debtors shall, upon the Effective Date of the Amended Plan (the "Effective Date"), through a draw on the DIP Facility, fund into escrow for use by the Liquidating Debtors an amount of cash sufficient for the Liquidating Debtors to undertake and fund the Transition Services (the "Transition Services Escrow"). The Transition Services Escrow will be used to fund the Transition Services and any costs, expenses, fees or other amounts associated with the Transition Services. All such amounts associated with the Transition Services shall be solely the responsibility of Reorganized Sable Land and the Holders of Credit Agreement Claims, *provided* that the Plan Administrator shall not be paid additional compensation, nor incur any additional expense for, the oversight of Transition Services unless requested by the Agent for the Holders of Credit Agreement Claims to provide Transition Services, and in that event, shall be entitled to be compensated at its customary rate(s) for any work actually performed. After the completion of the Transition Services, any amounts |

4

| | |
|---|---|
| | remaining in the Transition Services Escrow shall be returned to Reorganized Sable Land.

In addition, at no cost to the Plan Administrator, Reorganized Sable Land shall provide the Plan Administrator and/or the Plan Administrator's professionals, reasonable access to officers, employees and documents of Reorganized Sable Land or any of the Debtors to the extent required in connection with the Wind-Down, reconciliation of general unsecured claims against SPR and SPR OpCo, or prosecution of the Retained Avoidance Actions. |
| **New Warrants** | Consistent with the terms of the Plan as of the date hereof, Reorganized Sable Land shall issue the New Warrants on the Effective Date, and such New Warrants shall:<br>1. be exercisable at any time for a period of three (3) years from the Effective Date, for up to 10%, in aggregate, of the shares of New Common Equity outstanding on the Effective Date (on a fully diluted basis calculated prior to dilution by the New Incentive Plan Equity (which New Incentive Plan Equity shall not exceed 3.5% of total New Common Equity on a fully diluted basis without the written consent of the Ad Hoc Group)), at a strike price calculated based on total enterprise value of $630 million, with customary anti-dilution protections as to be set forth in the New Warrant Agreement; and<br>2. be distributed as Plan treatment to Holders of Class 8—Secured Notes Deficiency Claims and Class 9—Unsecured Notes Claims on a Pro Rata basis. |
| **Lenders' Consideration:** | The Holders of Credit Agreement Claims, in exchange for the Cash Consideration and the New Warrants, will receive the Purchased Assets and the Purchased Claims. |
| **Insider/Defendant/SML Releases** | The Defendants and SML shall release all claims against the Debtors, whether documented through the Confirmation Order or otherwise.

The Debtors shall release all claims against the Defendants and SML consistent with the relevant provisions included in the Plan filed on December 1, 2020. The Credit Agreement Agents, the Committee, and the Committee members shall release all claims against the Defendants, solely in Defendants' capacities as officers or employees of the Debtors, and SML, whether documented through the Confirmation Order or otherwise.

If a Defendant or SML provides releases to be a Releasing Party, such Defendant or SML shall be a Released Party under the Amended Plan. |

5

| **Plan Mechanics:** | The Plan will be amended to reflect the terms of this Term Sheet, with such amendments (and any applicable plan supplement documents) in a form acceptable to all parties hereto. In addition to reflecting the other terms hereof, the Amended Plan will: <br><br> 1. Retire, release or otherwise permanently extinguish all Purchased Claims; <br><br> 2. Effect the transfer of the Purchased Assets to Reorganized Sable Land; <br><br> 3. Provide that the general unsecured creditors of SPR and SPR OpCo shall receive their ratable portion of the Cash Consideration or litigation proceeds in respect of the Retained Avoidance Claims as treatment in respect of their Claims (with value to be allocated to the appropriate General Unsecured Claims pool in accordance with <u>Exhibit A</u> attached hereto); <br><br> 4. Provide for issuance of the New Warrants as Plan treatment in the manner set forth in the existing Plan; <br><br> 5. Provide for payment of allowed secured claim amounts owed to certain creditors asserting valid first priority M&M liens by Sable Land or Reorganized Sable Land in full and in cash on the Effective Date, in an amount no less than those set forth on <u>Exhibit B</u> hereto; <br><br> 6. Provide for full releases and exculpations for the Defendants, SML and all of the parties who are the target of the Purchased Claims for liability arising from the Purchased Claims; <br><br> 7. Provide for customary release and exculpation provisions for the Credit Agreement Agents, the Holders of Credit Agreement Claims, the Ad Hoc Group, the Holders of Secured Notes Claims, the Holders of Unexercised Equity Interests in SPR Finance, the Defendants, SML, the professionals of each of the foregoing, the professionals for each of (i) the Debtors and (ii) the Committee and the members of the Committee; and <br><br> 8. Provide for each Releasing Party and each member of the Committee to release all claims and causes of action against SML and the Defendants, solely in Defendants' capacities as officers or employees of the Debtors. |
|---|---|
| **Debtors' Commitments** | The Debtors shall not consent to the allowance of any prepetition unsecured Claim against the Liquidating Debtors over the Committee's and/or Plan Administrator's objection. |
| **Lenders' Commitments:** | The Holders of Credit Agreement Claims will agree to waive their right to assert their DIP liens over any unencumbered assets owned by the Debtors (including any unencumbered real property at Sable Land) and their right to recovery under the Amended Plan in respect of their deficiency claims, |

|  | if any.  For the avoidance of doubt, the Holders of Credit Agreement Claims or DIP Claims shall not be entitled to receive, either directly or indirectly, any of the Cash Consideration or proceeds of the Retained Avoidance Actions. |
|---|---|

# EXHIBIT A

### (Allocation Among Debtors)

| Debtor | Allocation |
|---|---|
| Sable Permian Resources, LLC | All Cash Consideration except for such amount sufficient to provide Holders of Allowed General Unsecured Claims against SPR OpCo the same Pro Rata recovery as that provided to Holders of Allowed General Unsecured Claims against SPR |
| Sable Permian Resources Operating, LLC | Amount sufficient to provide the same Pro Rata recovery as that provided to Holders of Allowed General Unsecured Claims against SPR |
| Sable Land Company, LLC | $388,000[5] |

---

[5] The amount specified in numbered item 4 of the Section titled "Committee's Consideration" in this Term Sheet, which is in addition to the Cash Consideration. For the avoidance of doubt, the Amended Plan will provide that Holders of RBL Credit Facility Deficiency Claims will waive such claims against Sable Land.

## EXHIBIT B

### (Allowed Secured M&M Liens)

| No. | Entity | Agreed Allowed Secured Claim |
|---|---|---|
| 1. | U.S. Well Services, LLC | $3,076,295.42 |
| 2. | Halliburton Energy Services, Inc. | $6,570,661.83 |
| 3. | Select Energy Services, LLC | $3,037,999.96 |
| 4. | Gravity Oilfield Services, LLC | $285,314.72 |
| 5. | Crest Pumping Technologies, LLC d/b/a Nine Energy Service | $71,562.09 |
| 6. | Sooner Pipe, L.L.C. | $32,986.95 |
| 7. | BK Equipment, LLC | $28,690.83 |
| 8. | Pilot Thomas Logistics, LLC | $313,688.36 |
| 9. | Red Diamond Energy Services, Inc. d/b/a Diamond B Oil Tools | $60,001.16 |
| 10. | Other Valid Secured M&M Liens, not to exceed $103,656.13 | $\leq$ $103,656.13 |
| **Total** | | **$13,580,857.45** |