**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | § Chapter 11 |
| | § |
| **SABLE PERMIAN RESOURCES, LLC,** *et al.*, | § Case No. 20-33193 (MI) |
| | § |
| Debtors.[1] | § (Jointly Administered) |

**FIRST AND FINAL FEE APPLICATION OF JENNER & BLOCK LLP
FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF
EXPENSES AS SPECIAL COUNSEL TO THE DEBTORS FOR
THE PERIOD FROM AUGUST 14, 2020 THROUGH JANUARY 29, 2021**

**THIS APPLICATION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Sable Permian Resources, LLC (5172); SPR Stock Holdings, LLC (2065); Sable Permian Resources Operating, LLC (3212); SPR Holdings, LLC (3611); SPRH Finance Corporation (1390); Sable Permian Resources Corporation (9049); Sable Permian Resources Finance, LLC (6841); SPR Finance Corporation (0359); and Sable Land Company, LLC (7101).  The location of the Debtors' main corporate headquarters and the Debtors' service address is:  700 Milam Street, Suite 3100, Houston, TX 77002.

| Name of Applicant | Jenner & Block LLP |
|---|---|
| Applicant's role in case | Special counsel to the Debtors, acting at the direction of the CRO |
| Date of Order of Appointment Signed | 9/21/2020 (Docket No. 426) |
| | Beginning of Period / End of Period |
| Time period covered by this Application: | 8/14/2020 / 1/29/2021 |
| Time period covered in all prior Applications: | N/A / N/A |
| Total amounts awarded in all prior Applications: | N/A |
| Total fees requested in this Application: | $970,817.00 |
| Total professional fees requested in this Application: | $923,226.50 |
| Total actual professional hours covered by this Application: | 1,005.9 |
| Average hourly rate for professionals: | $917.81 |
| Total paraprofessional fees requested in this Application: | $47,590.50 |
| Total actual paraprofessional hours covered by this Application: | 134.0 |
| Average hourly rate for paraprofessionals: | $355.15 |
| Reimbursable expenses sought in this Application: | $1,550.81 |
| Total to be paid to priority unsecured creditors: | TBD; paid in the ordinary course. |
| Anticipated % dividend to priority unsecured creditors: | 100% |
| Total to be paid to general unsecured creditors: | • *General Unsecured Claims against SPR*: TBD; pro rata share of "SPR-SPR OpCo Distribution Pool"<br>• *General Unsecured Claims against SPR OpCo*: TBD; pro rata share of "SPR-SPR OpCo Distribution Pool"<br>• *General Unsecured Claims against Sable Land*: TBD; pro rata share of "Sable Land Cash Pool"<br>• *General Unsecured Claim against Other Debtors*: no distribution and no retained property |
| Anticipated % dividend to general unsecured creditors: | • *General Unsecured Claims against SPR*: >0%-TBD<br>• *General Unsecured Claims against SPR OpCo*: >0%-TBD<br>• *General Unsecured Claims against Sable Land*: 1% |

|  | • *General Unsecured Claims against Other Debtors*: 0% |
|---|---|
| Date of confirmation hearing: | January 29, 2021 |
| Indicate whether plan has been confirmed: | Yes (Docket No. 844) |
| Number of professionals included in this application | 13 |
| If applicable, number of professionals in this Application not included in the staffing plan approved by the client | 5 |
| If applicable, difference between fees budgeted and compensation sought for this period | $213,214 (including additional matters not budgeted) |
| Number of professionals billing fewer than 15 hours to the case | 6 |
| Are any rates higher than those approved or disclosed at retention? | Yes; Jenner's rates increased on January 1, 2021 (Docket No. 785) |

Jenner & Block LLP ("Jenner") files its first and final application (this "Fee Application") for allowance of compensation and reimbursement of expenses as special counsel to the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), acting at the direction of the Debtor's Chief Restructuring Officer, for the period from August 14, 2020 through and including January 29, 2021 (the "Fee Period"). In support of this Fee Application, Jenner submits the declaration of Vincent E. Lazar, a partner at Jenner (the "Lazar Declaration"), which is attached hereto as Exhibit A and incorporated herein by reference. In further support of this Fee Application, Jenner respectfully states as follows:

## RELIEF REQUESTED

1. Jenner requests that the Court enter an order (the "Order"), substantially in the form attached hereto, (a) granting final allowance of compensation for actual, reasonable, and necessary professional services Jenner rendered to the Debtors during the Fee Period in the amount of $970,817.00 and reimbursement for actual, reasonable, and necessary expenses that Jenner incurred during the Fee Period in the amount of $1,550.81, and (b) authorizing the Debtors to remit payment to Jenner of such allowed compensation and expense reimbursement amounts, less any and all amounts previously paid on account of such fees and expenses.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), and the *Order Establishing Procedures for Interim*

*Compensation and Reimbursement of Expenses of Professionals* [Docket No. 233] (the "Interim Compensation Order").

## BACKGROUND

4. On June 25, 2020 (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing these chapter 11 cases. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Anthony C. Duenner, Vice President, Corporate Development of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 23].

5. During the pendency of their chapter 11 cases, the Debtors operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee was requested in these chapter 11 cases.

6. On July 7, 2020, an ad hoc group of holders of Senior Secured First Lien Notes due 2024 (the "Ad Hoc Noteholder Group") filed a motion requesting the appointment of an examiner [Docket No. 145] (the "Examiner Motion").

7. On July 17, 2020, the United States Trustee for the Southern District of Texas appointed the Official Committee of Unsecured Creditors (the "Committee").

8. On July 24, 2020, this Court entered the *Agreed Order (I) Appointing a Judicial Mediator, (II) Requiring Parties to Maintain Confidentiality of Mediation Communications, and (III) Granting Related Relief* [Docket No. 228], which appointed Chief Judge David R. Jones to mediate matters in these chapter 11 cases as necessary (the "Mediation").

9. On July 27, 2020, this Court entered the Interim Compensation Order, which set forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

10. In connection with the resolution of the Examiner Motion and Mediation, the Debtors filed an application to employ M-III Advisors Partners, LP ("M-III") and to designate Mohsin Y. Meghji as the Debtors' chief restructuring officer ("CRO") [Docket No. 282]. On September 1, 2020, the Court entered an order [Docket No. 371] authorizing the retention of M-III and the designation of Mr. Meghji as CRO, and the Ad Hoc Noteholder Group filed a notice of withdrawal of the Examiner Motion [Docket No. 374].

11. On September 21, 2020, this Court entered an order authorizing the Debtors to employ and retain Jenner as their special counsel, acting at the direction of the CRO [Docket No. 426].

12. Pursuant to the Interim Compensation Order, Jenner has submitted five monthly fee statements for services rendered and expenses incurred on behalf of the Debtors during the Fee Period. As of the date hereof, Jenner has not received any objections to its monthly fee statements.

13. A summary of Jenner's prior fee statements (including the January 2021 statement which is being submitted with this Fee Application), and all payments Jenner has received in accordance with the Interim Compensation Order, is set forth in the chart below:

| Monthly Fee Statement Period | Expenses Incurred | Expenses Paid (100%) | Fees Incurred | Fees Paid (80%) | Total Balance Owed |
|---|---|---|---|---|---|
| August 14, 2020 – August 31, 2020 | $0.00 | $0.00 | $203,473.00 | $162,778.40 | $40,694.60 |
| September 1, 2020 – September 30, 2020 | $23.95 | $23.95 | $463,579.00 | $370,863.20 | $92,715.80 |
| October 1, 2020 – October 31, 2020 | $216.49 | $216.49 | $203,727.00 | $162,981.60 | $40,745.40 |
| November 1, 2020 – November 30, 2020 | $1,310.37 | $1,310.37 | $73,368.50 | $58,694.80 | $14,673.70 |

| December 1, 2020 – December 31, 2020 | $0.00 | $0.00 | $19,017.50 | $15,214.00 | $3,803.50 |
|---|---|---|---|---|---|
| January 1, 2021 – January 29, 2021 | $0.00 | $0.00 | $7,652.00 | $0.00 | $7,652.00 |
| **Balance Owing:** | | | | | **$200,285.00** |

10. Jenner performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity or person.

11. Jenner has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.

12. Pursuant to Bankruptcy Rule 2016(b), Jenner has not shared or agreed to share (a) any compensation it has received or may receive with another party or person other than the partners, counsel, and associates of Jenner or (b) any compensation another person or party has received or may receive.

### A. Fees Earned During the Fee Period

14. Jenner's hourly rates are set at a level designed to compensate Jenner fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure utilized by Jenner in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Jenner for other restructuring matters as well as non-restructuring matters. Attached hereto as Exhibit B is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

15. Professionals and paraprofessionals of Jenner have expended a total of 1,139.9 hours in connection with the chapter 11 cases during the Fee Period. The reasonable value of the

services rendered by Jenner to the Debtors during the Fee Period is $970,817.00. Attached as Exhibit C is a schedule providing certain information regarding the Jenner partners, counsel, associates, and paraprofessionals for whose work on these chapter 11 cases compensation is sought in this Fee Application, including the hours expended and the fees incurred by each attorney and paraprofessional.

16. In accordance with its internal billing procedures, Jenner established project categories for the work performed on behalf of the Debtors. Attached as Exhibit D is a schedule of the hours expended and fees incurred (on an aggregate basis) by Jenner attorneys and paraprofessionals during the Fee Period with respect to each of those project categories. Attached as Exhibit E is (a) the Debtors' budget plan for Jenner for this Fee Period, (b) the Debtors' staffing plan for Jenner for this Fee Period, and (c) a schedule comparing the actual hours expended and fees incurred during this Fee Period with the amounts budgeted for this Fee Period. An explanation of any budget variances is set forth below in paragraph 33 of this Fee Application.

### B. Summary of Services

17. During the Fee Period, Jenner represented the Debtors, acting at the direction of the CRO, in connection with the following matters:

a) Jenner investigated all potential claims or causes of action arising from transactions or matters in which the Debtors' general bankruptcy counsel, the Special Committee, or counsel to the Special Committee previously had been involved, as well as certain additional matters as instructed by the CRO;

b) Jenner advised and represented the Debtors in connection with the preparation and advancement of the portions of the disclosure statement relating to matters that were the subject of its investigation, as well as stakeholder negotiations concerning to the claims that were the subject its investigation;

c) Jenner assisted the Debtors in preparing for mediation before Judge Jones, and participating in portions of the mediation relating to matters that were the subject of its investigation claims; and

      d)      Jenner prepared to support the CRO in the event the plan confirmation hearing was contested and involved matters that were the subject of its investigation.

18.    Set forth below is a summary of the professional services Jenner rendered on behalf of the Debtors during the Fee Period, organized by the project categories established at the outset of the chapter 11 cases. Detailed records of the fees incurred during the Fee Period on behalf of the Debtors are attached as <u>Exhibit F</u>.

      (a)      <u>Bankruptcy Litigation</u>

            Total Fees:    $830,413.50
            Hours:           992.60

19.    In support of the Debtors' sale process and plan negotiations, Jenner (acting at the direction the CRO) investigated all potential claims involving transactions or matters in which the Debtors' general bankruptcy counsel, Special Counsel, or counsel to the Special Committee previously had been involved. The CRO requested that Jenner conduct this investigation in order to ensure that any viable claims would be properly valued in the context of evaluating qualified sale bids for the Debtors' assets, and also so that if the Debtors ultimately determined to pursue a plan process, the CRO could assess the propriety and value of any proposed releases of claims.

20.    The matters investigated by Jenner included (but were not limited to) the Debtors' 2019 restructuring transaction, claims that were released in the 2019 restructuring transaction, and potential claims arising from compensation paid to the Debtors' insiders at the beginning of 2020.

21.    Jenner sought and obtained input from key stakeholders and their counsel concerning potential claims and matters of concern at the outset of the independent investigation. Its investigation ultimately involved the review of more than 10,000 pages of documents, as well as more than 20 initial and follow-up interviews.

22.    Following the delivery of an extensive report to the CRO in September 2020, the

CRO requested that Jenner conduct a supplemental investigation into certain information that had been identified by stakeholders during the course of the initial investigation, including compensation-related matters and transactions involving alleged conflicts of interest. Jenner delivered a supplemental report to the CRO in November 2020 addressing those matters.

23. In part as a result of Jenner's work and reports, the CRO was able to negotiate a plan of reorganization that was confirmed on a largely consensual basis, and which permitted the Debtors to emerge from bankruptcy in January 2021.

      (b)    <u>Disclosure Statement and Stakeholder</u>

           Total Fees:    $100,547.50
           Hours:         103.30

24. At the conclusion of a bidding process, the Debtors determined to pursue a plan of reorganization in order to emerge from bankruptcy. Acting at the direction of the CRO, Jenner advised and assisted the Debtors in preparing and advancing the portions of the disclosure statement that relating to the matters that were the subject of its investigation and reports.

25. The CRO also requested that Jenner represent the Debtors in stakeholder negotiations concerning to the claims that were the subject its investigation, including discussions and negotiations with equity holders and the Unsecured Creditors Committee ("<u>UCC</u>"). This included responses to written demands from the UCC that the CRO prosecute certain claims against insiders that had been the subject of Jenner's investigation.

26. In addition, Jenner assisted the Debtors in the disclosure statement and plan mediation matters before Judge Jones, including the preparation of materials pertaining to the subject matter of its investigation. Jenner also participated in the initial mediation sessions where matters that were the subject of its investigation claims were at issue.

      (c)      <u>Plan Confirmation Disputes</u>

           Total Fees:    $6,396.00
           Hours:          5.30

27.     Although most plan disputes were resolved as a result of the initial mediation sessions before Judge Jones, it was unclear whether all plan objections would be resolved prior to the commencement of the confirmation hearing. As the CRO's request, Jenner prepared to support the CRO and Debtors in a contested plan confirmation hearing with respect to matters that were the subject of its investigation.

      (d)      <u>Retention/Fee Applications</u>

           Total Fees:    $20,557.50
           Hours:          26.90

28.     This category includes time spent by Jenner attorneys and paraprofessionals relating to the retention and compensation matters in these chapter 11 cases. Specifically, Jenner attorneys and paraprofessionals spent time (a) preparing, reviewing, and/or revising retention applications, related declarations, and proposed orders for Jenner and other Debtor professionals; and (b) preparing Jenner's monthly fee statements.

      (e)      <u>UCC Standing Motion</u>

           Total Fees:    $12,902.50
           Hours:          11.80

29.     In November 2020, the UCC filed a motion seeking standing to prosecute claims that were property of the Debtors' estate, including certain claims that had been the subject of Jenner's investigation.

30.     At the CRO's request, Jenner assisted the Debtor in preparing a response to the UCC's standing motion, and provided related support.

### C. Expenses Incurred During the Fee Period

31. Jenner incurred actual and necessary expenses on behalf of the Debtors totaling $1,550.81 during the Fee Period. A summary of these expenses is attached hereto as <u>Exhibit G</u>, and a detailed statement of such expenses is attached hereto as <u>Exhibit H</u>.

### D. Compliance with Budget

32. Jenner prepared an initial case budget and staffing plan for the CRO that covered the period from the Petition Date through and including September 2020, and a subsequent 45-day budget. As set forth in Exhibit E, these budgets forecasted a total case budget of $757,603.

33. The services provided by Jenner were generally consistent with the budgets approved by the CRO, but the fees billed exceeded the budgeted amounts for the following reasons:

(a) the scopes of both the initial and supplemental investigations were expanded to include claims that were not originally contemplated at the time the budgets were prepared, and the supplemental investigation extended into November as a result of matters raised during stakeholder plan and disclosure statement negotiations;

(b) the budget did not include work preparing and advancing the portions of the disclosure statement that concerned matters which were the subject of Jenner's investigation, or pre-solicitation stakeholder negotiations concerning to the claims that were the subject of Jenner's investigation; and

(c) the budget did not include work requested by the CRO assisting the Debtors in preparing for mediation before Judge Jones, and participating in portions of the mediation;

(d) the budget did not include work relating to the UCC's standing motion.

All of this additional work was reasonable, necessary, and appropriate to the administration of these chapter 11 cases and contributed to a successful outcome, and none of it was fairly contemplated at the time the budgets were prepared.

**BASIS FOR RELIEF REQUESTED**

34. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under Section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the following non-exclusive criteria to determine the amount of reasonable compensation to be awarded:

> In determining the amount of reasonable compensation to be awarded . . . , the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (a) the time spent on such services;
>
> (b) the rates charged for such services;
>
> (c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (e) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and
>
> (f) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

35. The professional services provided by Jenner during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases. These services were essential to support the CRO's efforts to negotiate and implement a consensual plan of reorganization, and contributed to the successful outcome of the Debtors' cases. Many of the services were provided under severe time constraints, requiring Jenner attorneys and other

employees to devote substantial time during evenings and on weekends to perform services on behalf of the Debtors.

36. Jenner provided its services effectively and efficiently, and the results obtained benefitted the Debtors, their estates, and their constituents. Jenner submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services and the cost of comparable services outside of bankruptcy. Jenner therefore requests that this Court allow final allowance of compensation for professional services Jenner rendered to the Debtors, acting at the direction of the CRO, during the Fee Period in the amount of $970,817.00 and reimbursement for expenses that Jenner incurred during the Fee Period in the amount of $1,550.81.

## **NOTICE**

37. Pursuant to the Interim Compensation Order, notice of this Fee Application will be provided to (i) the Notice Parties (as defined in the Interim Compensation Order); (ii) Reorganized Sable Land (as defined in the Plan) at: Bighorn Asset Company, LLC, Attn: Mr. James Mayfield, 5221 N O'Connor Blvd., 11th Floor, Irving, TX 75093 (jmayfield@fdlenergy.com); and (iii) the Plan Administrator (as defined in the Plan) at: Conway MacKenzie, LLC, Attn: Paul Jansen, 909 Fannin Street, Suite #4000, Houston, TX 77002 (Paul.Jansen@conwaymackenzie.com).

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, Jenner respectfully requests that the Court enter the Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated:  March 17, 2021
        Chicago, Illinois

Respectfully submitted,

*/s/ Vincent E. Lazar*
Vincent E. Lazar (admitted *pro hac vice*)
**JENNER & BLOCK LLP**
353 North Clark Street
Chicago, IL 60654
Tel:    (312) 222-9350
Fax:    (312) 527-0484
Email:  vlazar@jenner.com

*Special Counsel for the Debtors and Debtors in Possession, acting at the direction of the CRO*